UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

G. WOODWARD STOVER, II and
BETSY UPTON STOVER,                         Case No. DT 10-06192
                                            Hon. Scott W. Dales

            Debtors.                        Chapter 7

_____/

<u>OPINION AND ORDER REGARDING FEE APPLICATION</u>

PRESENT:   HONORABLE SCOTT W. DALES
           United States Bankruptcy Judge

Butzel Long, LLP (the "Firm") represented Chapter 11 Debtors G. Woodward Stover, II

and Betsy Upton Stover (the "Stovers" or "Debtors") in connection with their ill-fated Chapter

11 case. The Firm filed an application for compensation (the "Application," DN 75), which

drew an objection (the "Objection," DN 83) from Summit Community Bank ("Summit Bank").

The court held a hearing on October 20, 2010 in Traverse City, Michigan (the "Hearing")

to consider the Application and Summit Bank's Objection.

Although Summit Bank's repossession activity precipitated the filing, the Stovers had

been contemplating bankruptcy and preparing for it (presumably by assembling asset and claim

information for inclusion on schedules) for some time. In the months before the Debtors'

bankruptcy filing on May 13, 2010 (the "Petition Date"), the Firm spent approximately 116

hours and received over $50,000.00 "for services rendered or to be rendered on behalf of the

debtor(s) in contemplation of or in connection with the bankruptcy case . . ." *See* Disclosure of

Compensation of Attorney for Debtor(s) filed May 27, 2010 ("Rule 2016 Statement," DN 23).[1]

---

[1] The court extrapolated the prepetition hours by dividing the Firm's postpetition fees by the number of postpetition hours to determine a blended postpetition rate of $431.00/hour. The court then divided the reported prepetition fees of approximately $50,000.00 by the blended rate, to determine the approximate number of hours spent preparing for

In the 27 days during which the Stovers were Chapter 11 debtors-in-possession, the Firm spent another 90.20 hours revising schedules, collecting information, contacting creditors, and otherwise preparing the Debtors for their first meeting of creditors and initial debtor interview with the United States Trustee. In addition, lawyers from the Firm travelled to and from Grand Rapids and Traverse City to participate in meetings with the United States Trustee and creditors, as is customary in Chapter 11 proceedings. The Firm also prepared and filed a motion to convert and this Application.

At the Hearing, with the concurrence of Summit Bank's counsel, the Firm's representative, Thomas B. Radom, Esq., made an evidentiary proffer and offered legal argument in support of the Application. In his proffer, Mr. Radom explained the complexity of the Stovers' financial situation, a complexity borne of their numerous interests and transactions in the oil and gas and telecommunications industries before the Petition Date. Mr. Radom noted that the Debtors had nearly 100 creditors with claims in the amount of approximately $65 million. In addition, he testified without contradiction, that the Debtors had assets of approximately $3 million with which to satisfy those claims.

As of the Petition Date, the Debtors were engaged in litigation around the country in at least 18 separate matters. The Firm represented the Debtors essentially as general counsel with respect to this litigation before the Petition Date. Mr. Radom stated that the Stovers were demanding clients who insisted on punctilious representation and compliance with their obligations as estate fiduciaries.

Given the Debtors' complicated financial situation, Mr. Radom plausibly argued that it was incumbent upon him as their attorney to consult with other members of the Firm to properly

the bankruptcy filing. The court assumes the Firm's blended rate was the same for the postpetition and prepetition periods.

evaluate his clients' options and performance of their fiduciary duties as debtors-in-possession. The parties evidently agreed, and the court finds, that the Debtors' Chapter 11 bankruptcy case was not an ordinary consumer filing. Indeed, testimony suggested that Mrs. Stover is an "heiress" and her husband was very active in the oil and gas and telecommunications industries before falling on hard times. The magnitude of the debt (much of it allocable to commercial guarantees), confirms the extraordinary nature of this individual Chapter 11 case. Mr. Radom defended the Application by adverting to the complexity and nature of the case, arguing that the time spent and rate imposed were both reasonable and necessary under these circumstances.

With respect to the rate, the court notes that the Firm is based in the Detroit area, outside the Western District of Michigan. Mr. Radom testified that he reduced his customary hourly rate from $600.00 to $450.00 per hour as a courtesy to the Stovers (the Firm's long-standing clients) and in recognition of their fiduciary duties to their creditors. Neither the Firm nor Summit Bank offered any evidence regarding the appropriate rates for paraprofessionals in the Western District of Michigan, but Summit Bank did offer the testimony of Lansing attorney Norman C. Witte, Esq. regarding customary attorney rates charged for comparable services within the District. During the Hearing, after preliminary questions and the Firm's *voir dire* of Mr. Witte, the court qualified him as an expert witness under Federal Rule of Evidence 702, finding Mr. Witte qualified by education, training and experience to give opinion testimony regarding hourly rates of attorneys in the Western District of Michigan.

Based upon his experience as a local bankruptcy practitioner who has represented creditors and debtors, individuals and corporations, Mr. Witte opined that customary rates for representing Chapter 11 debtors in our District range from $200.00 per hour to as high as $400.00 per hour for some attorneys in the larger firms in Grand Rapids. This testimony

comports with the court's understanding and experience. The court notes that Mr. Radom's rate of $450.00 per hour is not dramatically different from the higher-end rates of comparable attorneys in our District. Other shareholders in the Firm charged lower rates.

For his part, Mr. Radom proffered his testimony with respect to the rates that his Detroit-based firm charges for attorney time but offered no testimony regarding rates specific to the Western District. His presentation plausibly suggested that the Firm, with offices in metropolitan Detroit, has higher overhead expenses than other firms within our District. The court finds, based upon the record presented, that the Firm's rates, particularly given the complexity of the Debtors' case, are not unreasonable.

At the Hearing, however, Mr. Radom did not sufficiently address the substantial work the Firm performed prepetition in connection with the Debtors' bankruptcy. The Debtors' Statement of Financial Affairs at ¶90 (the "SOFA," DN 31) and the Firm's Rule 2016 Statement both establish that the Firm charged, and the Debtors paid, approximately $50,000.00 "in connection with" this case, prior to filing.[2] This figure excludes the Firm's $22,267.29 retainer (the "Retainer"). Neither the SOFA nor the Rule 2016 Statement requires any such detail, but without this information the court cannot determine whether the work performed postpetition duplicated the Firm's pre-petition work. *See* 11 U.S.C. § 330(a)(4)(A). The burden of proof is upon the applicant to justify the requested fees. *Zolfo, Cooper & Co. v. Sunbeam-Oster Company, Inc.*, 50 F.3d 253, 261 (3d Cir. 1995) ("[t]he fee applicant has the burden of proving it has earned the fees it requests, and that the fees are reasonable"); *see also In re New Boston Coke*

---

[2] Summit Bank made this point through Mr. Witte's testimony, but Mr. Radom did not adequately respond at the Hearing or ask for a continuance. The relationship between the time spent in connection with preparing for an imminent bankruptcy filing and the time spent after filing the petition is logical. For example, to the extent the Debtors drafted schedules prepetition, the court should not allow charges for drafting the schedules postpetition (though some post-filing revision seems reasonable). The Firm ought to have anticipated this concern given the magnitude of prepetition fees it disclosed and the mandate of 11 U.S.C. §§ 330(a) and 503(b).

*Corp.*, 299 B.R. 432 (Bankr. E.D. Mich. 2003); *In re Hamilton Hardware Co., Inc.,* 11 B.R. 326 (Bankr. E.D. Mich. 1981).   The court "will not indulge in extensive labor and guesswork to justify a fee for an attorney who has not done so himself."  *In re Woodward East Project, Inc.,* 195 B.R. 372, 375 (Bankr. E.D. Mich. 1996).

A bankruptcy court may award "reasonable compensation for actual, necessary services rendered" and "reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).  As the United States District Court for the Western District of Michigan recently observed, our Circuit uses the "'lodestar method' to determine what constitutes a reasonable fee award."  *Boyd v. Engman (In re Engman)*, 404 B.R. 467, 477 (W.D. Mich. 2009) (*citing In re Boddy*, 950 F.2d 334, 337 (6th Cir. 1991)).  This approach requires the court to determine a "lodestar amount" by multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended. *Id.*  Here, because the Firm used several different timekeepers, the court performed the analysis for each, despite the lack of information the Firm provided.

Most generally, the court is troubled by the number of hours the Firm expended postpetition and pre-conversion given the relatively modest results obtained and the amount of time and money expended before the Petition Date.   In addition to the lodestar analysis prescribed in the cases, and as set forth in the court's Memorandum Regarding Allowance of Compensation and Reimbursement of Expenses for Court-Appointed Professionals ("Fee Memorandum"),[3] the court considers the reasonableness of fees generally, though not exclusively, in view of the results obtained.  *See* Fee Memorandum at ¶ 18.

Because of the court's concerns about the relationship between the substantial prepetition bankruptcy preparations and the reasonableness of the postpetition services, the court has determined to limit the award by disallowing entries likely duplicating prepetition services, and

---

[3] See LBR 2016 at Exh. 7 (as amended effective Jan. 1, 2010).

allowing fees only for services clearly and necessarily related to the period from the Petition Date to the conversion date.  For example, after the Petition Date, but before conversion, the Firm:

1.  filed and revised schedules and related statements listing not more than 100 creditors;

2.  prepared an employment application;

3.  attended and prepared for meetings (including the initial debtor interview) with the United States Trustee to ensure compliance with the guidelines of that office;

4.  prepared the Debtors to testify and represented them while testifying at their first meeting of creditors;

5.  gave notice of the bankruptcy filing to litigating creditors;

6.  negotiated with several creditors, including Summit Bank, regarding return of collateral seized prepetition; and

7.  prepared a motion to convert the case to Chapter 7 within a month of filing the petition.

When considering the results obtained, the court concludes that $42,168.18 in fees and expenses in addition to $52,910.00 paid in anticipation of bankruptcy is unreasonably high. Having reviewed the itemization included with the Application, the court finds that a portion of the hours the Firm's attorneys spent in amending the Debtors' schedules, preparing the Debtors for, and attending, the first meeting of creditors and initial debtor interview are compensable.  In addition, the court will award some fees for negotiating with creditors, preparing the boilerplate conversion motion, plus one hour for preparing the Application.  Despite the automatic effect of the automatic stay, the court also concludes that as a practical matter, the Firm necessarily

expended some limited time in providing notice to various litigating creditors in the 18 or so lawsuits around the country.[4]

Other than these items, in the absence of any showing to the contrary, the court determines that the rest of the time entries, such as many involving shareholders' reviewing guarantees, preparing bankruptcy stay notices, and the Application,[5] are either largely duplicative, not reasonable when performed by a shareholder as opposed to a paralegal, or excessive in light of the amount of time expended and work done in preparation for the bankruptcy.

The court credits Mr. Radom's report that his clients were demanding and accustomed to a high level of service.   Given the confidential and sensitive nature of the attorney-client relationship, courts are reluctant to second-guess staffing decisions.   When the economic impact of staffing decisions is not visited upon a debtor's creditors or estate, the debtor and counsel should have a free hand in arranging their affairs.   When, however, the clients' bankruptcy estate and creditors must bear the brunt of the staffing decisions, the court is obligated as a matter of statute to intercede by disallowing the fees or retroactively reducing the rate to reflect appropriate staffing levels, regardless of whether the client might demand to speak only with particular higher-rate attorneys.   For their part, attorneys whose fees will ultimately be charged to bankruptcy estates and creditors under 11 U.S.C. §§ 330 and 503 must carefully divide the labor, at times delegating tasks to professionals with lower hourly rates.   From the record, the court

---

[4] From the Application, it appears that the task of preparing suggestions of bankruptcy for filing in the various lawsuits fell to Daniel J. Dulworth, Esq., a shareholder charging $375.00/hour.  It was not reasonable for the Firm's shareholders to prepare and serve these perfunctory notices, where paraprofessionals with basic computer skills and a minimum of experience or direction could have accomplished the task at a fraction of the cost.  After counsel approved the form of the notice, a paralegal certainly could have changed the caption for filing in the respective courts.

[5] A paraprofessional should have prepared most of the Application:  it was not reasonable for Mr. Radom to spend three hours, at $450.00/hour, to do so.  *See* 11 U.S.C. § 330(a)(6).  Moreover, a sophisticated enterprise such as the Firm has most likely automated much of the recordkeeping and itemization.

infers that the Firm fell short of these aspirations, perhaps given the nature of the clients, counsel, creditors, and other idiosyncrasies of the case.

Therefore, given the complexity of the case, the limited results achieved postpetition, and the lack of proof regarding the Firm's prepetition work, the court will allow the following fees which could only have been earned after the bankruptcy petition was filed and are consequently, not duplicative. In addition, the court has considered the nature of the tasks and the level of experience of the timekeepers to the extent possible,[6] and has reallocated some of the hours from the Firm's shareholders to its associates and lone paralegal. The court summarizes its lodestar analysis as follows:

| TIMEKEEPER | HOURS | RATE | TOTAL |
| --- | --- | --- | --- |
| Mr. Radom | 14.00 | $450.00/hour | $6,300.00 |
| Mr. Newman | .60 | $400.00/hour | $240.00 |
| Mr. Dulworth | 7.50 | $375.00/hour | $2,812.50 |
| Mr. Quattlebaum | .60 | $250.00/hour | $150.00 |
| Ms. Mullin | 12.50 | $205.00/hour | $2,562.50 |
| Ms. Hendrickson | 13.50 | $140.00/hour | $1,890.00 |
| **Total** | **48.70** | | **$13,955.00** |

The magnitude of pre-filing services rendered "in connection with the bankruptcy," *see* SOFA at ¶9, coupled with the absence of any information regarding the nature of the tasks performed prepetition impede the court in determining what portion of the postpetition services was necessary and beneficial to the estate. For example, it is reasonable to infer that the Firm expended a considerable amount of effort prepetition assembling information to include on the

---

[6] The Firm attached only four biographies to the Application, but the court is willing to infer that the Firm's attorneys and paralegal assigned to the Debtors' case have experience and competence in bankruptcy.

Debtors' schedules. The court notes, too, that although the amount of the Debtors' debts is quite large, there is a relatively small number of creditors. In addition, a review of the docket suggests that at least some of the creditors were holding consent judgments, making it simpler to schedule the already-liquidated claims.

Although the court perceived no need to revise the *de minimus* time allocable to Messrs. Newman and Quattlebaum, many of the tasks that the Firm's shareholders performed, especially the highest-rate billers,[7] should have fallen to associates and paralegals. The court notes that the Firm's three shareholders performed approximately 94% of the postpetition services. In contrast, the Firm's two associates performed approximately 5% of the work, and the lone paralegal, less than 1%. *See* Application at Exhibit B. Considering that approximately 1/3 of the 90.2 hours reflected in the Application involved preparing the petition, schedules, and SOFA, *see* Application at Exhibit C, the court concludes that the Firm did not appropriately staff this matter. Associates and paralegals, rather than shareholders, could and should have performed much of the schedule preparation and revision. Mr. Radom's extensive and unchallenged experience and expertise justify his handsome rate reflected in the Application, but that same experience and expertise ought to have impelled him to delegate to less-expensive personnel many of the tasks he and other shareholders performed. Accordingly, the court has allocated much of the shareholder time to the associates and paralegal.

In deciding to allow the Fees to the extent described in this Opinion, the court has also considered the necessity and benefit of the services at the time at which the service was rendered, as well as the other factors enumerated in 11 U.S.C. § 330(a)(3). As noted above, the case was not a run-of-the-mill consumer case. The court finds that the complexity of the Debtors' oil and gas and telecommunications debts to some extent required greater than usual attorney (and

---

[7] Mr. Radom and Mr. Dulworth charged the highest rates at $450.00 and $375.00 per hour, respectively.

shareholder) time in preparing schedules, and the court has taken this complexity into account. Summit Bank's only evidence -- an expert whom the court qualified to opine on rates -- did not undercut Mr. Radom's proffer in this respect, so the court's award tolerates an unusually high allocation of time to the shareholders. Nevertheless, though the court does not doubt the Firm's good faith, it appears that the Debtors' Chapter 11 case was a Chapter 7 case "waiting to happen." *See In re Hotels Nevada, LLC*, BK-S-09-31131-BAM, slip op. at pp. 2, 5 (Bankr. D. Nev., Sept. 27, 2010) (*reported in* BCD News and Comment, Vol. 53, No. 20, Nov. 2, 2010). Indeed, the Chapter 11 phase of this proceeding lasted less than a month, and the record suggests very little effort directed at effecting a meaningful reorganization, as opposed to simply disclosing assets and liabilities.   Under the circumstances, the court will allow fees, but in a reduced amount.

Finally, the court notes that the Firm is holding the Retainer, and sees no reason why this should not be applied to reduce the allowed amount of the Firm's fees and expenses, "subject to the statutory *pro rata* distribution scheme in § 726(b)." *Specker Motor Sales Co. v. Eisen (In re Specker Motor Sales, Co.),* 393 F.3d 659, 663 (6th Cir. 2004).

NOW, THEREFORE, IT IS HEREBY ORDERED that the Firm shall have an administrative claim under 11 U.S.C. §§ 330 and 503(b)(2) in the amount of $13,955.00 in fees and $3,576.18 in expenses, to be paid from the Retainer, pending final distribution.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon the United States Trustee, Thomas B. Radom, Esq., Michael Hill, Esq., Rachel Hillegonds, Esq., James W. Boyd, Esq., and all parties requesting notice of these proceedings.

END OF ORDER

**IT IS SO ORDERED.**        _____
Scott W. Dales
United States Bankruptcy Judge    **Dated: November 05, 2010**